## Negroes Louisa Bell and others, *vs.* Luther D. Jones.

The act of 1796, ch. 67, sec. 27, provides, that where a *petition for freedom* is filed and dismissed, and a *second* petition filed by the same party, the court shall order a stay of all proceedings in the second case, "until the costs of the former petition, and *all reasonable damages and expenses*, sustained or incurred by" the master, "shall have been paid or secured to be paid:" Held,

That *counsel fees* paid by the master for defending the first petition, are not included in the words, "*all reasonable damages and expenses.*"

In construing a statute, the language employed must be considered with special reference to the subject matter legislated upon.

Where a law secures a *valuable right*, and contains qualifying or restricting provisions, which, from their language, are susceptible of a construction making them either moderately restrictive, *or* of a construction which would annul the right, or render it of no practical value, the latter construction should not prevail.

Where an order of court is within the limits of *its discretion*, it is final and no appeal lies, but where the order, upon its face, appears to be partly within and *partly beyond* the scope of the court's authority, it may be appealed from and reversed.

An order directing a stay of proceedings upon a second petition for freedom, until jail-fees and board, to the amount of "$250 *or thereabouts*," are paid, is defective for *uncertainty:* such an order is subject to the same rule, in regard to *certainty*, which is applicable to verdicts and judgments.

Appeals from the Circuit Court for Prince Georges county.

This was a *petition for freedom*, filed on the 11th of September 1854, in the Superior Court of Baltimore city, by the appellants against Campbell, who, on the 2nd of December of that year, came in and disclaimed title, and on the 9th of the same month, the appellee filed his petition claiming title to the petitioners, as administrator *d. b. n., c. t. a.*, of Walter Chew, exhibited his letters of administration, and prayed a removal of the case to the circuit court for Prince Georges county, where he resided. On the 5th of January 1855, the court permitted the appellee to appear and defend the case, upon entering into the usual recognizance, and ordered the removal as prayed.

The case so removed came up for trial in the circuit court

for Prince Georges county, on the 11th of June 1855, upon the issue of *freedom vel non.* A jury was empannelled to try the case, and the petitioners being called and not answering, the petition was dismissed by order of the court, and judgment rendered in favor of the defendant, for $11.98$\frac{1}{3}$, "for his costs and charges here adjudged unto him, in and about his defence in this behalf laid out and expended." On the same day the petitioners filed their *second petition* against the appellee, who at the same time made and filed in the case the affidavit as to his costs and expenses, which is set out in the opinion of this court, and on the same day the court, (CRAIN, J.,) passed an order, which is also set out in the opinion of this court, directing "a stay of all proceedings in this second petition, until the said costs and expenses shall be paid or secured to be paid." From this order the petitioners appealed.

A subpœna was issued, commanding the defendant to appear and answer this second petition, returnable on the 1st Monday in November 1855, on which day the appellee appeared and was ruled by the court to answer, or judgment by default would be rendered against him. The defendant then prayed leave to imparle until the 1st Monday in April 1856, which was granted, and at the April term 1856, he moved the court to dismiss this second petition, upon the ground, that the costs and expenses allowed by the order of the 11th of June 1855, had not been paid or secured to the defendant, and because by the 26th section of the act of 1796, ch. 67, it is provided, that such non-payment of costs and expenses, authorises a dismissal of the petition. The court thereupon ordered the petition to be dismissed, and from this order the petitioners appealed. The record in the cause was not transmitted to the Court of Appeals, until the 8th of April 1856.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Alex. B. Hagner* and *John M. S. Causin* for the appellants, argued:

1st. That the 27th section of the act of 1796, ch. 67, did

not contemplate *counsel fees* in the words, *"costs* of the former petition and all reasonable *damages* and *expenses,"* but had reference solely to charges growing out of the petition, such as legal costs, jail fees, expenses in producing the negroes at court, and maintaining them during trial, costs of the recognizance, &c. Because, 1st. If counsel fees are contemplated, by *whom are* they to be paid? Certainly not by the petitioners. They remaining slaves, (the petition for freedom having been dismissed,) could have no rights or responsibilities of a civil character separate from their master, and could make no contracts either with third parties or even himself. 4 *H. & J.*, 547, *Wicks vs. Chew.* 5 *Do.*, 191, *Hall vs. Mullin.* 9 *G. & J.*, 27, *Bland et al., vs. Negro Dowling.* 2nd. The act could not contemplate that third parties, unconnected with the record, would pay such demands, for that would be encouraging *maintenance,* which is denounced by the law. 1 *Bl. Com.*, 457. 3rd. The general scope of legal authorities is adverse to the inclusion of counsel fees, under the general terms, *"costs* and charges." 7 *Md. Rep.*, 249, *Wallis et al., vs. Dilley et al.* They are not *costs, Wright's Rep.*, 121, *McDonald vs. Page.* They are not *"damages,"* 13 *How.*, 369, *Day vs. Woodworth, Sedwick on Damages,* 99. Nor do they come under the word *"expenses,"* as used in this act. The word *"expenses"* as here used, means just what *"damages"* means and nothing more, and the terms "damages *and* expenses," are to be read "damages *or* expenses." *Smith's Com.*, 658, 731. *Dwarris on Statutes*, 74. 3 *Gill*, 496, *Watkins & wife, vs. Sears.* 19 *Verm.*, 140, *Barker vs. Esty.* Again, this statute, in this respect, inasmuch as it is restrictive of the right of petition for freedom secured to negroes, is like a *penal statute* and must be strictly construed. *Dwarris on Statutes,* 68, 74, 78, 79, 711, 712, 772. 6 *Md. Rep.*, 400, *Cochrane vs The State.* An *attorney's fee* as established and regulated by the acts of 1715, ch. 48, and 1810, ch. 126, is the $3.33⅓, which is part of the costs of the case, taxed by the clerk and collected by execution. This was the only *counsel fee* known to the *legislation* of that day. This is undoubtedly included in the words, "costs, damages and expenses," but whatever was paid by the client to his

counsel, beyond this sum, as a fee or reward for his professional services and skill in giving advice, and opinions, in conducting, arguing and trying causes, was not a subject of legislative regulation; it was regarded as *quiddam honorarium*, given not as a salary or hire, but as a *gratuity*. The Legislature could not have intended to include *such fees* by the language used in this act, and if by construction they should be embraced, it would effectually put an end to every petition for freedom after the dismissal of a former one. It would put it in the power of masters to render the filing of a second petition, almost, if not absolutely, impossible.

2nd. That this order is wholly inoperative and void: 1st. It does not direct *by whom* these costs, damages and expenses, were to be paid. 2nd. The court acted solely upon the *ex-parte* affidavit of the defendant, taken without notice to the petitioners or their counsel, and no opportunity was offered them to contest the account, either as to its items or the reasonableness of the damages and expenses, either as to counsel or jail fees. The words of the statute, "to be ascertained by the court," imply not an arbitrary discretion, but examination and judgment upon legal evidence. 2 *Md. Rep.*, 334, *Lambden vs. Bowie*. 4 *Md. Rep.*, 497, *Ex-parte Shipley & wife*. 1 *Greenlf. on Ev.*, secs. 82, 83, 329, 348, 349, 364. 1 *Bouv. Law Dic.*, 428. Act of 1809, ch. 153, sec. 1. 1 *H. & G.*, 407, *Union Bank vs. Ridgely*. 66 *Law Lib.*, 146. 3 *Phillips on Ev.*, 5. The amount of these damages and expenses should have been ascertained by a *jury trial*, under the provision of the 4th section of the 10th article of the constitution. These authorities also answer the objection, that no appeal will lie from this order, because the ascertainment of these damages and expenses was left to the *discretion* of the court. If the court has not kept *within the scope* of the *authority given to it by the statute*, if it has allowed an item or charge which the law does not contemplate should be allowed, and the order shows this *upon its face*, it is clearly subject to revision on appeal. 3rd. The order is also *void for uncertainty*. The *affidavit*, even, is not *definite* as to the expenses: it charges $250 for jail fees, or *thereabouts*. The order of the court is

equally inexplicit; it does *not specify the amount to be paid,* but orders the payment of the expenses specified in the affidavit. What amount, under this order, was to be paid? $250, or an approximation thereto? if the latter, how near? The order, being a judgment, must be *certain;* it is subject to the same rule as to *certainty,* which is applicable to verdicts *and judgments.* For these reasons, we insist that the first order appealed from should be reversed.

3rd. That the order dismissing the second petition was erroneous: 1st. Because upon a strict construction of this act of 1796, ch. 67, its 25th and 26th sections apply exclusively to cases of petitions for freedom *then pending,* so far as they authorise the dismissal of a second petition after six months, upon failure to pay the costs of the first; and the 27th section, which, by its terms, applies to *"petitions thereafter to be filed,"* only authorises a *stay of proceedings* until payment, of reasonable *damages and expenses,* and not a *dismissal* of the petition after the *lapse of six months.* 2nd. Because the act contemplates a *voluntary* dismissal of the first petition by the parties petitioning, and does not apply to petitions dismissed by order of court, as was done in this case. 3rd. Because the order of the stay of proceedings was abrogated by the action of the court, in issuing a *subpœna* to the defendant to answer the second petition, and its order that the defendant should answer this petition or judgment by default would be rendered against him. 4th. Because his privileges under the order directing the stay of proceedings, were *waived by the defendant with the sanction of the court,* in this, that on the 5th of November 1855, the defendant prayed leave to *imparle* until the April term 1856, which prayer was granted by the court; all of which proceedings are utterly inconsistent with the order of the 11th of June 1855, directing the stay.

*Thos. G. Pratt* and *John Nelson* for the appellee, moved to dismiss the appeal from the order directing the stay of proceedings:—1st. Because the power to ascertain the costs and expenses which the master had incurred by reason of the first petition, was a special power vested by the 27th sec. of the

act of 1796, ch. 67, exclusively in the inferior court, and the exercise of which is placed exclusively in the *discretion* of that court, and consequently no appeal will lie from the exercise of that power. 2 *H. & G.*, 79, *Wall vs. Wall.* 3 *G. & J.*, 20, *Wilson vs. Wilson.* 7 *Do.*, 109, *Boteler, et al., vs. The State.* 5 *H. & J.*, 175, *Anderson vs. The State.* 6 *Do.*, 151, *Hawkins vs. Jackson.* 7 *Do.*, 454, *Carroll vs. Barber.* 10 *G. & J.*, 283, *Owings vs. Worthington.* 1 *Bland*, 5, *Ringgold's case.* *Smith's Com.*, 713. 26 *Wend*, 485, *Lyon vs. Jerome.* 2nd. Because the record was not transmitted to the Court of Appeals within the time required by law. They then argued, that if the appeal did lie and properly brought up for review *both* the orders appealed from:

1st. That the court below had authority to dismiss the *second petition.* The act of 1796, ch. 67, gives the right of *jury trial* in cases of petition for freedom, but, at the same time, limits and defines that right. The object of the law was to give the right of petition, and at the same time to protect the master from *vexatious proceedings* in such cases. The 26th section authorises the court to dismiss the petition, unless the costs and damages are paid within *six months.* There is no assignable reason why this restriction should apply to cases *then pending.* The mischief is the same, the vexation just as great, in cases thereafter to be instituted as in those then pending. If the petition is to stand forever on the docket and can be revived by payment of costs at any time, then the master is entirely deprived of the power of alienation over such property. We insist, therefore, that the restriction as to time contained in the 26th section, will be applied to the cases provided for in the 27th section. In construing statutes we must look to the mischief to be redressed, and the remedy to be advanced in order to ascertain the intention of the makers. 1 *Brock.*, 162, *Strode vs. The Stafford Justices.* Statutes are sometimes extended to cases not within the letter of them. 2 *G. & J.*, 374, *State vs. Boyd.* And courts will apply, by *analogy*, the restrictions contained in *express* enactments on *kindred subjects*, to cases of similar character where no such express legislative restriction exists. 8 *Md. Rep.*, 387, *Edwards vs. Bruce.*

But, independent of any statutory provision, the power to entertain jurisdiction of the case, and order a stay of proceedings until costs are paid, includes the power to limit the time within which such an order is to be complied with, and on failure to comply therewith to dismiss the petition.

2nd. That the order directing the stay of proceedings was in all respects legal and proper. The record does not show upon *what evidence* the court below acted. The judge was sitting in a court of law, where oral testimony is usually taken, and he certifies, in his order, that he was *satisfied* the defendant had sustained the damages specified in the order; and this court must presume, that he was so satisfied by *legal evidence.* But it is urged, that as the order provides for the payment of *counsel fees* it is erroneous. There is no pretence that these fees were not *reasonable.* The 27th section of this law of 1796, provides, in terms, that "the costs of the former petition, and *all reasonable* damages and expenses sustained or incurred" by the master, must be paid; that is, *all* reasonable damages, and *all* reasonable *expenses.* What are expenses? Prosecution of the suit, and payment of *counsel fees,* are surely part of the *expenses* attendant upon, or *sustained* and *incurred* by, the defendant in every case of a petition for freedom. *Full indemnity* to the master for all such expenses was the object of the act. 9 *Wheat.*, 362, *The Appollon.* Again, it is said the order is not in proper form, inasmuch as it fails to provide *by whom* these costs shall be paid. But it is in the very terms of the statute, and could not in its nature be made applicable to any *particular person;* nor could it be made obligatory upon any person whatever.

ECCLESTON, J., delivered the opinion of this court.

The 27th section of the act of 1796, ch. 67, enacts: "That if any petition, for freedom shall hereafter be filed in any court of law in this State, and dismissed, and a second petition filed at the suit of the same party, the court, in which such second petition may be filed, shall order a stay of all proceedings until the costs of the former petition, and all reasonable damages and expenses sustained or incurred by the defendant or defen-

Negroes Bell, *et al.*, *vs.* Jones.

dants therein, to be ascertained by the court, shall have been paid or secured to be paid."

In the proceedings before us, it appears the defendant made an affidavit, in which he says, that by virtue of the first petition for freedom, filed by the petitioners in the second case, he has sustained, and incurred the following expenses: for fees paid his two counsel, $250 each, making $500; "for jail fees and board of the petitioners" from the 13th of November 1854, to the 11th of June 1855, "at twenty five cents each per day, making $250 or thereabouts, in addition to the taxable costs in his cause."

The order of the court, after stating the dismissal of the first petition, then says: "The same parties having filed a second petition, which is now pending, and the defendant, Luther D. Jones, having satisfied the court that he has sustained and incurred, by reason of the said petition so dismissed as aforesaid, the expenses in his affidavit hereto attached specified, which are deemed by the court reasonable, it is thereupon on the application of the said Luther D. Jones, this 11th day of June 1855, ordered by this court, that there shall be a stay of all proceedings in the said second petition, until the said costs and expenses shall be paid or secured to be paid."

This order contains the only ascertainment of damages or expenses by the court. And if it shows they have ascertained any amount of either, it is the amount of expenses specified in the affidavit of the defendant; for the order does not mention any sum to be paid or secured to be paid, except by reference to the affidavit, which is spoken of in the order as being thereto attached.

The appellants contend that this order is erroneous, because it allows counsel fees as expenses. Whether the allowance is proper or not, depends upon the interpretation of the act of 1796; and the words having an important bearing on that subject, are, "reasonable damages and expenses."

In construing a statute, the language employed must be considered with special reference to the subject matter legislated upon.

Should it be evident that a valuable right is intended to be secured, but there are provisions which qualify the right, or impose restrictions upon it, and those provisions contain language susceptible of such construction as may either be moderately restrictive, or so far in conflict with the right as to annul it altogether, or render it of no practical value, then the enlarged construction of the qualifying provisions should not prevail. For it cannot be a reasonable supposition that the legislature designed the language should have an interpretation which would virtually repeal, or render exceedingly doubtful of any practical utility, the privilege evidently intended to be secured by the act.

It is perfectly manifest that, by the act of 1796, the Legislature intended to secure the right of filing a second petition for freedom after one has been dismissed; the petitioner, however, being required to comply with the terms prescribed by the statute.

The restrictions upon this right are relied on by the appellee, when he insists that the court committed no error in allowing him counsel fees, as expenses. But can it be imagined the Legislature contemplated such an allowance? So to imagine, would be equivalent to saying they had provided for a second petition, but had imposed upon it such clogs and restrictions as must render the beneficial exercises of the privilege, by those for whom it was designed, next to an impossibility. We cannot suppose the Legislature had any such design. They were aware that negroes, held as slaves, could not have funds of their own, nor be expected to procure them from others, sufficient to pay the fees of counsel employed by their masters. The laws of this State recognize negroes as slaves, and the courts are bound to protect and enforce the legitimate rights of masters. It is likewise the duty of our courts so to administer the laws as will secure to negroes the rights designed for them by law.

It is to be remembered, the law does not require payment of *all*, but of "reasonable damages and expenses." The meaning of *reasonable*, cannot be correctly understood without due consideration of the subject to which the word is applied.

That which in one class of cases may be reasonable, might be quite the reverse in a different class.

After an examination of the authorities in regard to whether counsel fees are proper to be allowed as damages, we find the decisions on the subject, in our sister States, have not been uniform. In his work on damages, Mr. Sedgwick treats of this question at some length, commencing at page 99. He notices a variety of cases, without, however, coming to any definite conclusion as to the preponderance of authority.

In *Wallis, et al., vs. Delley, et al.*, 7 *Md. Rep.*, 249, it is held "to be well established, that in all matters arising *ex contractu*, the successful party is not entitled to recover the fees which he may have paid to his counsel." In *Day vs. Woodworth, et al.*, 13 *How. S. C. Rep.*, 363, the right to claim such fees as damages was denied. There the suit was trespass *quare clausum fregit* in which the defendants were charged with tearing down and destroying the plaintiff's mill dam.

Looking to the contradictory decisions on the subject, and allowing proper weight and influence to our own, and to that of the Supreme Court of the United States, when the very peculiar nature of such cases as the one before us is duly considered, we do not think the act of 1796 should be construed to include counsel fees, as "reasonable damages and expenses," or as either.

Should it be conceded, that, in providing for the ascertainment of the reasonable damages and expenses to be paid to the defendant, the 27th section of the act of 1796 gives to the court a right to exercise their discretion, still, when undertaking to make the ascertainment, if their order or judgment, upon its face, shows they have included in the amount an item or charge which the Legislature never designed should be so included, such a decision may be revised on appeal. It may be true, that an act of the court which is within the limits of their exclusive discretion is final; but, nevertheless, if it appears to be partly within and partly beyond the scope of their authority, it may be appealed from and reversed.

Believing the Legislature did not intend counsel fees to be

allowed as expenses, and seeing that the court have included them in their ascertainment of expenses, we think their order on the subject is erroneous.

The order is likewise defective for uncertainty. It refers to the defendant's affidavit for the amount of expenses, in which the jail fees and board of the petitioners are stated to be "$250 or thereabouts."

Such an order must be subject to the like rule, in regard to certainty, which is applicable to verdicts and judgments. That *they* are required to be certain, is a principle so well settled, we shall refer to but few authorities on the subject. 10 *Bac. Abr.*, 346, *title Verdict, letter* Q, *(Bouv. Ed.;) Hambleton vs. Veere*, 3 *Saund. Rep.*, 169, 171, *(Ed. of* 1846;) *Miller vs. Hower*, 2 *Rawle's Rep.*, 55, 56; and *Harman vs. Childress*, 3 *Yerger*, 329, where it is said,—"a judgment must express with certainty and precision, the determination of the court."

That the affidavit is rendered uncertain by the words, "or thereabouts," we suppose cannot be doubted. If so the order is equally uncertain. And we think the court committed an error in directing a stay of all proceedings, until the expenses should be paid or secured to be paid, whilst the amount was not ascertained with sufficient precision. On account of which error the order should be reversed, notwithstanding it may be conceded to have been passed by the court whilst exercising a discretionary authority; for even if they had a discretion in fixing the amount, still they were bound to state it with certainty.

A majority of the judges sitting in this cause, think, that counsel fees should not have been allowed as expenses; and it is the unanimous opinion of the court that, for want of sufficient certainty in the amount of expenses, the order which directed a stay of all proceedings in the second petition, until payment of the costs and expenses should be made or secured, was erroneous. Under such circumstances, we think the court below were wrong in dismissing the last petition; and this renders it unnecessary to decide some of the questions which have been argued with much ability.

From the views set forth in this opinion it will be seen, that we consider the appellants entitled to a reversal of each order appealed from.

*Reversed upon both orders appealed from and a procedendo awarded in regard to the second petition.*